# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CAROL ANN EICHHORST,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. 13 C 7635<br><br>Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Carol Ann Eichhorst filed this action seeking reversal of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits under Title II of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 423 *et seq*. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and have filed cross-motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this opinion.

### I. THE SEQUENTIAL EVALUATION PROCESS

To recover Disability Insurance Benefits (DIB), a claimant must establish that he or she is disabled within the meaning of the Act. *York v. Massanari*, 155 F. Supp.

2d 973, 976-77 (N.D. Ill. 2001).[1] A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops inquiry and leads to a determination that the claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

[1] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 *et seq*. The standard for determining DIB is virtually identical to that used for Supplemental Security Income (SSI). *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB on March 10, 2011, alleging that she became disabled on October 10, 2004, due to limited mobility to her left arm, elbow, and hand, carpel tunnel in right and left hand, pain in left shoulder, neck, elbow and hand, plate in neck, limited mobility, lower back pain, anxiety, and fatigue. (R. at 9, 45). The application was denied initially and on reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 9, 62–65, 67–69). On June 6, 2012, Plaintiff, not represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 9, 21–44). The ALJ also heard testimony from Richard T. Fisher, a vocational expert (VE). (*Id.*).

The ALJ denied Plaintiff's request for benefits on June 12, 2012. (R. at 9–17). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity from October 10, 2004, her alleged onset date, through September 30, 2010, her date last insured of. (*Id.* at 11). At step two, the ALJ found that Plaintiff's degenerative disc disease, status post cervical fusion, carpal tunnel syndrome, status post bilateral carpal tunnel release, and obesity were severe impairments. (*Id.* at 11–12). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listings enumerated in the regulations. (*Id.* at 12).

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[2] and determined that during the period of October 10, 2004, through September 30, 2010, she could have performed light work as defined in in 20 C.F.R. § 404.1567(b) except that she can "frequently climb ramps and stairs but never ladders, ropes or scaffolds; frequently balance and stoop; occasionally kneel, crouch and crawl; frequently reach in all directions, including overhead with both upper extremities; frequently handle and finger and constantly feel with both upper extremities." (R. at 12). At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id.* at 15–16). Based on Plaintiff's RFC, age, education, work experience, and the VE's testimony, the ALJ determined at step five that there were jobs in the national economy that Plaintiff could perform, including cashier II, housekeeper/cleaner, and routing clerk. (*Id.* at 16). Accordingly, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (*Id.* at 17).

The Appeals Council denied Plaintiff's request for review on September 4, 2013. (R. at 1-3). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of

---

[2] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft*, 539 F.3d at 675–76.

whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'log-

ical bridge' between that evidence and the ultimate determination." *Moon v. Colvin,* 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

### IV. MEDICAL EVIDENCE

In October 2004, Plaintiff suffered a neck injury while working as a sewing machine operator. (R. at 235). On October 12, 2004, Plaintiff received emergency medical care for neck pain at Morris Hospital following the work-related incident. (*Id.* at 257–66). October 14, 2004, Plaintiff saw Kevin Draxinger, M.D., an orthopedic and cervical spine specialist. (*Id.* at 239). She complained of pain mostly in her neck, occasionally on the right side and left side, occasional sharp pain going through her elbow area, and worsening pain when she sits and stands up. (*Id.* at 239). An MRI of the cervical spine on November 29, 2004, showed multiple levels of disc desiccation and herniation at C5-C6 with mild impingement on the left side of the spinal cord. (*Id.* at 236, 252).

On January 11, 2005, Plaintiff saw Jason Franklin, M.D., an orthopedic surgeon referred by Dr. Draxinger to evaluate the pain in her neck. (R. at 235). On January 17, 2005, he administered an epidural steroid injection on her left side. (*Id.* at 247). Following the injection, she continued to have numbness in her hand, and tightness down her back and into her arms. (*Id.* at 234). On February 9, 2005, an EMG nerve conduction study showed evidence of a bilateral median neuropathy at the wrist, and Dr. Franklin prescribed carpal tunnel splints. (*Id.* at 233). Plaintiff was re-

ferred to Eric Ortinau, M.D., for a carpal tunnel assessment, and on July 11, 2005, Dr. Ortinau recommended carpal tunnel release surgery. (*Id.* at 228). On August 5, 2005, Plaintiff had right carpal tunnel release surgery (*id..* at 245), and on August 19, 2005, Plaintiff had left carpal tunnel release surgery (*id.* at 243). Following surgery, on August 29, 2005, Dr. Ortinau noted that she had no numbness and tingling, and prescribed therapy on her right and left sides. (*Id.* at 223). During a follow-up on September 19, 2005, Dr. Ortinau noted pain in the hands at the lower incisions, but that she had full range of motion and could return to work with "no restrictions with respect to her carpal tunnel surgeries." (*Id.* at 222).

On April 17, 2006, in a follow-up with Dr. Draxinger, Plaintiff complained of problems with her left and right arms. Dr. Draxinger noted that all non-operative treatments had failed and recommended surgery. On May 18, 2006, Plaintiff had an anterior cervical decompression and fusion at 5-6. (R. at 221, 240). At a post-surgery follow-up on May 26, 2006, Plaintiff complained of problems with her right arm, mostly at the elbow, and problems with her left shoulder. On June 23, 2006, Dr. Draxinger noted that she was doing well, had minimal neck pain, but still had tingling in her hands. (*Id.* at 218). On July 21, 2006, Dr. Draxinger noted that she had "a lot of pain on palpation of her right paraspinal and medius muscles." (*Id.* at 217). On August 18, 2006, he noted that her neck continued to be a problem, she had tension in her neck and arm, shooting pains occasionally down her anterior forearm and fingers, a lot of tightness and pain on palpation of her neck on both the right

and left sides, and she "had to quit the work hardening[3] after about four days because it was hurting her low back as well as in her neck." (*Id.* at 216). On September 20, 2006, during Plaintiff's last visit with Dr. Draxinger due to his leaving the practice, he noted that she had done most treatments, including surgery, but had failed when trying to do a work conditioning program. Relying on a functional capacity evaluation which placed her at a "light sedentary" level, he recommended a permanent restriction at that level. (*Id.* at 215).[4]

On December 6, 2006, Plaintiff followed-up with Dr. Franklin stating that she still had pain in the neck area, the pain was getting worse, it was now in the right forearm area, and sometimes in the back of the hand. (R. at 214). She returned on December 15, 2006, for a follow-up evaluation of the right tennis elbow and right index trigger finger. Plaintiff complained of pain in the right elbow, and noted pain continued without improvement. (*Id.* at 213). On March 12, 2007, Plaintiff followed up with Dr. Ortinau, and complained of right sided pain in the neck and upper arm. (*Id.* at 212). Dr. Orinau noted pain in the trapezius region on the right side. (*Id.*).

On March 26, 2007, Plaintiff had a cervical myelogram, post-myelogram cervical spine with reconstructions exam at Morris Hospital. (*Id.* at 286–88). The exam indicated no evidence of cervical spinal stenosis, disc herniation or significant nerve root

---

[3] Work hardening is "a highly structured, goal-oriented, individualized treatment program designed to maximize a person's ability to return to work. Work hardening uses work (real or simulated) as a treatment modality." http://medical-dictionary.thefreedictionary.com/work+hardening.

[4] The functional capacity evaluation referenced by Dr. Draxinger is not contained in the medical records.

impingement, but found "mild asymmetry of the left inferior cerebellar hemisphere may be second to mild atrophy." (R. at 286-87). On December 13, 2009, Plaintiff went to Morris Hospital for left side numbness. (*Id.* at 289–310). Her physical exam was normal and she was diagnosed with "weakness" and an "anxiety reaction." (*Id.* at 290).

During the hearing on June 6, 2012, Plaintiff testified that for the past three years, her hands have been constantly asleep and as a result she has difficulty lifting "something heavier than a bottle of water" without dropping it. (R. at 35–36). She is unable to vacuum or wash the dishes, and she cannot use a computer because her hands fall asleep. (*Id.* at 32-34). Since her neck issues began, she has had sleeping problems and cannot sleep more than four hours a night. (*Id.* at 34). Her husband helps her bathe because she cannot lift her left arm past a certain point due to the pain. (*Id.* at 35). She has been unable to seek medical treatment for her hands because she does not have health insurance and cannot afford medical treatment. (*Id.* at 36).

## V. DISCUSSION

### A. The ALJ's Credibility Determination is Patently Wrong

Plaintiff contends that the ALJ erred in discounting Plaintiff's testimony about the nature and extent of her pain.[5] (Mot. 6–8, 10). An ALJ's credibility determination may be overturned only if it is "patently wrong." *Craft v. Astrue*, 539 F.3d 668,

---

[5] The Commissioner argues that Plaintiff waived the credibility issue. (Resp. 9). The Court disagrees and finds that Plaintiff properly raised the issue. (*See, e.g.*, Mot. 6, 8) (the ALJ failed to considered her "continued pain post her two surgeries"; "ALJ gave no reason for evaluating her credibility on problems with her hands").

678 (7th Cir. 2008). In determining credibility, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c); SSR 96-7p. An ALJ may not discredit a claimant's testimony about her symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing SSR 96-7p; 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("[T]he administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). Even if a claimant's symptoms are not supported directly by the medical evidence, the ALJ may not ignore circumstantial evidence, medical or lay, which does support a claimant's credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003). Indeed, SSR 96-7p requires the ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and other relevant evidence in the case record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (citation omitted).

The Court will uphold an ALJ's credibility finding if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The ALJ's decision "must contain specific reasons for a

credibility finding; the ALJ may not simply recite the factors that are described in the regulations." *Steele*, 290 F.3d at 942 (citation omitted); *see* SSR 96-7p. "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Steele,* 290 F.3d at 940.

The ALJ discounted Plaintiff's reports of pain on the basis that "my review of the medical records indicates that the claimant's symptoms and complaints are not supported by objective findings consistent with a finding of total disability prior to the date last insured." (R. at 13). The ALJ continued:

> The claimant did not follow up regarding her pain after her March 2007 visit. Instead, she tried to return to work (at a level greater than light exertional level). Her surgeries appear to have resolved her impairments. Her neurological exams were normal, and she had normal strength. She was released to work. These factors combine to diminish the claimant's credibility.

(*Id.* at 15).

For the following reasons, the ALJ's analysis is legally insufficient.

### *1. The ALJ Impermissibly Disregarded Plaintiff's Pain Testimony*

First, an ALJ may not discredit a claimant's testimony about her symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing SSR 96-7p; 20 C.F.R. § 404.1529(c)(2)). Lack of objective evidence to fully support allegations of pain is not a legitimate basis for rejecting a claimant's credibility. SSR 96-7p; *see Adaire v. Colvin*, 778 F.3d 685, 687 (7th Cir. 2015) ("[The ALJ's] principal error, which alone would compel reversal, was the recurrent error made by the Social Security Administration's administrative law judges, and noted in many of our cases, of discounting pain testimony that can't be attributed to 'ob-

jective' injuries or illnesses—the kind of injuries and illnesses revealed by x-rays.");
*Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) ("an administrative law judge may not deny benefits on the sole ground that there is no diagnostic evidence of pain but only the applicant's or some other witness's say so"). Moreover, in this case there was objective medical evidence of pain, which the ALJ disregarded. As enumerated above, Plaintiff was diagnosed with numerous ailments affecting her neck, arms, forearms, and hands.

The ALJ states that "the evidence shows the claimant had improved after her surgeries and was doing well." (R. at 13). However, a review of the record indicates otherwise. Post-surgery she complained of pain on almost every follow-up appointment, and was diagnosed with various ailments which could have contributed to her pain, including right upper extremity radiculopathy status post cervical fusion (*id.* at 212, March 12, 2007); right tennis elbow and right index trigger finger (*id.* at 213, December 15, 2006); and cervical disc degeneration, right lateral epicondylitis, and right trigger finger to the index finger (*id.* at 214, December 6, 2006). Further, all three of the treating physicians noted she continued to be in pain, post-fusion surgery. (*Id.* at 212–19). Thus, contrary to the ALJ's conclusion that her "surgeries appear to have resolved her impairments" (*Id.* at 15), the medical records indicate and Plaintiff testified that she continued to suffer pain following the surgeries.

The ALJ further states that Plaintiff's "neurological exams were normal, and she had normal strength." (R. at 15). However, the ALJ does not explain how a finding of normal strength undermines Plaintiff's credibility that she was experiencing

pain. Although the ALJ points to parts in the medical evidence where the physicians indicate "Plaintiff is doing fairly well" (*e.g., id.* at 217), the ALJ fails to mention that the physicians continually note that Plaintiff is in a "lot of pain" (*see, e.g.,* id. at 217) (Dr. Draxinger noting Plaintiff is doing fairly well post cervical decompression and fusion surgery but that "she had a lot of pain on palpation of her right paraspinal and medius muscles on that side").[6] "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

The ALJ also relies on a September 19, 2005 exam by Dr. Ortinau, noting that he released her to work and relies on this as evidence that Plaintiff is not credible. (R. at 14–15, 222). The exam was following her bilateral carpal tunnel surgery and the assessment states Plaintiff can get back to work "with no restrictions with respect to her carpal tunnel surgeries." (*Id.* at 222). This September 2005 exam predates the May 2006 fusion surgery, and the ALJ's reliance on this examination in isolation for the proposition that Plaintiff was "released to work" ignores all of the medical evidence noting pain leading up to and following Plaintiff's 2006 fusion sur-

---

[6] Dr. Draxinger opined that Plaintiff was capable of only "light sedentary work." (R. at 215). The ALJ gave "little weight" to Dr. Draxinger's opinion, concluding that Plaintiff had improved following surgery and her neurological exams were normal. (*Id.* at 15); (*see* Mot. 6, 9–10) (challenging the weight given to Dr. Draxinger's opinion). But as discussed above, in reaching these conclusions, the ALJ failed to properly consider Plaintiff's continuing assertions of debilitating pain. *See Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) (ALJ "must offer 'good reasons' for discounting a treating physician's opinion," and "can reject an examining physician's opinion only for reasons supported by substantial evidence in the record"). On remand, the ALJ shall reevaluate the weight to be given Dr. Draxinger's opinion with due regard for the medical evidence.

gery. Again, the ALJ has failed to explain how this assessment undermines Plaintiff's credibility of pain, especially considering that her treating physician, Dr. Draxinger, noted that she was unable to work and recommended surgery to alleviate her pain, a surgery that was undertaken several months later. (*Id.* at 220, April 17, 2006) ("She has essentially failed at all non-operative treatments and has not been able to work . . . we will plan for an anterior cervical decompression and fusion at 5–6.").

Lastly, the ALJ did not address Plaintiff's hearing testimony that her pain began when her neck issues started (dating back to 2004), and her hands fell asleep rendering her unable to pick up things. (R. at 32–36). It was impermissible for the ALJ to fail to consider Plaintiff's testimony. *See* 20 C.F.R. § 404.1529(c) (stating that the ALJ must consider a claimant's subjective complaints of pain); *Briscoe ex rel. Taylor*, 425 F.3d at 345.

### *2. The ALJ Impermissibly Relied on Plaintiff's Failure To Seek Treatment in Assessing Her Credibility*

The ALJ also rejected Plaintiff's complaints of pain because she "did not follow up regarding her pain after her March 2007 visit" and, therefore, "her surgeries appear to have resolved her impairments." (R. at 15).

An ALJ may not simply rely on a lack of treatment to find Plaintiff's allegations incredible. *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012). An ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference. *Id.*; SSR 96-7p, 1996 WL 374186, at *7. An ALJ may need to "question

the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." SSR 96-7p, 1996 WL 374186, at *7. The claimant's "good reasons" may include an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects. *Id.* at *8. Here, the ALJ made no effort to question Plaintiff about the perceived gaps in her treatment history after March 2007. Between March 2007 and September 2010, the date last insured, Plaintiff had only one medical visit, which occurred in December 2009 for left-sided numbness. Yet, despite the ALJ's failure to question Plaintiff on this lack of medical evidence, she uses this gap in medical records to find Plaintiff's pain not credible. This is not permissible.

In two places in the record Plaintiff noted that she did not have medical health insurance. During the hearing, the ALJ inquired as to whether Plaintiff had seen a physician for help with her hands falling asleep. Plaintiff replied that she could not afford to see a doctor, and she did not have medical health insurance. (R. at 36). Even though Plaintiff noted that she did not have health insurance during the June 2012 ALJ hearing, the ALJ did not inquire further as to whether she had medical health insurance between 2007 and 2010. Moreover, in a 2011 disability report for appeal,[7] she states: "I have not been able to be seen by any drs because of financial problems. I am in the process of filing for bankruptcy because of medical bills and I

---

[7] Although undated, the report most likely was generated between June 2011, when Plaintiff requested reconsideration, and September 2011, when her request for reconsideration was denied. (*See* R. at 66–69).

don't have any medical insurance so I cannot go see any drs. I have a lot of pain and discomfort, but I am trying to withstand the pain." (*Id.* at 187–90). The ALJ impermissibly discounted Plaintiff's credibility because she failed to follow-up with physicians after March 2007; this is despite the fact that at two places in the record Plaintiff indicates a lack of health insurance and inability to pay as of the time of the application.

### *3. The ALJ Impermissibly Relied on Plaintiff's Failed Work Attempts in Assessing Her Credibility*

Finally, the ALJ discredited Plaintiff's testimony because "she tried to return to work (at a level greater than the light exertional level)." (R. at 15). In 2008–09, Plaintiff worked at Kohl's for approximately four to five months before having to leave due to her physical impairments. (R. at 129). Plaintiff testified she had difficulty in that position: "I . . . lifted a box and my hands just let go and I couldn't do anything with it. And when I did that, that also caused me a back strain in the bottom of my back." (*Id.* at 30–31). In 2010, she attempted a position washing down the sides of washers and dryers, but that employment "lasted two days . . . because it was hurting my neck and my back." (*Id.* at 30). These were considered by the Social Security Administration and ALJ to be unsuccessful work attempts. (*Id.* at 11, 46).

The Seventh Circuit has observed that when a claimant for disability insurance benefits works this does not necessarily mean he is not disabled: "A desperate person might force himself to work despite an illness that everyone agreed was totally disabling." *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914,

918 (7th Cir. 2003). "Yet even a desperate person might not be able to maintain the necessary level of effort indefinitely," *id.*, as was the case here.

Essentially, in her decision the ALJ relies on Plaintiff's unsuccessful work attempts, attempts that Plaintiff was unable to maintain due to her impairments, as evidence that her pain is not credible. On the contrary, a claimant's "unsuccessful attempts to pursue various vocations might just as easily provide corroboration that her impairments significantly limited her ability to work, as opposed to evidence that her ability was greater than she alleged." *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011). The ALJ did not consider the possibility that Plaintiff's employment attempts support, rather than undermine, her testimony about her limitations. In fact, there is no evidence in the record to contradict Plaintiff's statements that she was limited in her work attempts. In terms of assessing her credibility, the ALJ fails to explain how Plaintiff working part-time for 4-5 months (R. at 129) contradicts her allegations of pain, *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("we are hard-pressed to understand how [claimant's] brief, part-time employment supports a conclusion that she was able to work a full-time job, week in and week out, given her limitations"). If anything, the unsuccessful work attempts corroborate that Plaintiff's pain was ongoing.

## B. The ALJ Failed to Develop the Medical Record

Plaintiff contends that the ALJ failed to obtain a valid waiver of representation when she appeared and testified at her hearing without legal representation. To insure a *pro se* litigant has given a valid waiver, an ALJ must explain that (1) having

an attorney present may help with the proceedings; (2) there is a possibility of free counsel or a contingency fee; and (3) attorneys' fees are limited to twenty-five percent of past due benefits and require court approval. *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994); *Skinner,* 478 F.3d at 841. The Commissioner does not dispute that these criteria were not met, and the waiver is invalid. (Resp. 2).

Because the waiver is invalid, the burden shifts to the Commissioner to show that the ALJ "fully and fairly developed the record." *Binion*, 13 F.3d at 245. Without a valid waiver, the ALJ's duty is heightened; she must "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Skinner*, 478 F.3d at 841–42. "While a claimant represented by counsel is presumed to have made his best case before the ALJ, no such presumption attaches to an unrepresented claimant." *Id.* at 842. Although the ALJ is required to "supplement the record . . . by asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records," courts typically defer to the ALJ's judgment unless there has been a "significant omission." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). A significant omission is one that is prejudicial to the claimant. *Id.* To demonstrate prejudice, a claimant must "set forth specific, relevant facts—such as medical evidence—that the ALJ did not consider," and "mere conjecture . . . is insufficient." *Id.*

Here, Plaintiff contends that the record before the ALJ was not adequately developed because a functional capacity exam from 2005 placing her at a

light/sedentary exertion level was not included in the record.[8] (Mot. 5). This report was referenced in two of Dr. Draxinger's medical assessments, and he relied on it to find that this "light sedentary level" should be adopted as a permanent restriction. (R. at 215, 227). Ultimately, the ALJ afforded Dr. Draxinger's opinion, and presumably the functional capacity evaluation he relied on, little weight. (*Id.* at 15). The Commissioner argues that the error was harmless because it is not a significant omission resulting in harm or prejudice to Plaintiff. (Resp. 2).

The Court finds that the record was not fully and fairly developed. Plaintiff has set forth a specific piece of medical evidence relevant to her claim that the ALJ did not consider. *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997). Since the Court is remanding on the issue of credibility, the Court need not decide whether this missing piece of evidence was a significant omission resulting in prejudice to Plaintiff. On remand, the Commissioner will make all reasonable efforts, pursuant to 20 C.F.R. § 404.1512(d), to ensure that there is a fully developed record. To the extent that the functional capacity evaluation from 2005 can be identified, it shall be included in the record.[9]

---

[8] In her opening brief, Plaintiff states that an MRI was missing, but in her Reply acknowledges that it was in fact in the record. (Reply 1; *see* R. at 252).

[9] Plaintiff contends that at step five, the ALJ misapplied the medical-vocational guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2 (Grids), in determining whether there were jobs that she could perform. (Mot. 9–10). The Grids are based on vocational factors of age, education, and work experience in combination with each of the possible strength categories of work, i.e. sedentary, light, medium, heavy, and very heavy. Grids § 200.00(a). Where the findings of fact coincide with all of the criteria for one of the rules, the Grids will direct a conclusion as to whether the claimant is or is not disabled. *Id.* For some claimants, like Plaintiff, additional exertional limitations impede the ability to perform the full range of work in a given strength category. Here, the ALJ recognized that because Plaintiff has limi-

**C. Summary**

Because the Court is remanding on the credibility and treating physician issues, the Court chooses not to address Plaintiff's argument that the ALJ erred in her RFC determination. On remand, the ALJ shall reassess Plaintiff's credibility with due regard for the full range of medical evidence. The ALJ shall then reevaluate Plaintiff's physical impairments and RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of her findings in accordance with applicable regulations and rulings. Finally, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff can perform.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment [15] is **GRANTED**, and Defendant's motion for summary judgment [20] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: June 15, 2015

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge

---

tations impeding the full range of light work, the Grids were not conclusive and a VE had to be consulted. *Thomas v. Barnhart,* 278 F.3d 947, 960 (9th Cir. 2002).